# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Case No. 06-cv-1043-WYD-MJW

ELIESER YAEL VELÁSQUEZ CATALÁN *et al.*,

    Plaintiffs,

v.

VERMILLION RANCH LIMITED PARTNERSHIP *et al.*,

    Defendants.

___

## PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS
___

Defendants' Motion to Dismiss should be denied on all grounds. Defendants at once argue that Plaintiffs' Complaint is "prolix, redundant and seemingly interminable" and on the other hand complain that it lacks specifics. In fact, due the complex nature of the legal claims and the involved facts, Plaintiffs' Complaint is necessarily long and detailed. But it is precise, well-organized and provides Defendants fair notice of the basis of the claims against them.

## I. FACTS

**A. COMPLAINT INCLUDES LENGTHY AND COMPLEX FACTS.**

First, the Complaint includes six Plaintiffs with separate and distinct facts. The details of each Plaintiff's employment are different in significant ways – *e.g.*, their arrival at the ranch, work performed, injuries suffered, threats received and termination or escape from the ranch. Thus, the Complaint contains separate sections for each Plaintiff. First Am. Compl. ¶¶ 77-164 (Yael Velásquez), ¶¶ 165-217 (Sergio Velásquez), ¶¶ 218-289 (Berrocal), ¶¶ 290-362 (Fuentes), ¶¶ 363-403 (Sandoval), and ¶¶ 404-476 (Vasquez).

Second, the Complaint names seven Defendants, including six individuals and one partnership. *Id.* ¶¶ 15-29. The six individual Defendants, members of the Dickinson family ("the Dickinson Defendants"), are partners in Vermillion Ranch Limited Partnership ("VRLP"). *Id.* ¶¶ 19-29. They own and operate VRLP together. *Id.* ¶¶ 30-32.

Finally, this lawsuit is factually complex. Defendants brought Plaintiffs to work at VRLP via the H-2A visa program. *Id.* ¶¶ 34-45. The H-2A program was an integral component of Defendants' system of exploitation and control, which included fraudulent recruitment, document seizure, improper pay schemes and unlawful threats. *Id.* ¶¶ 46-76.

**B.    COMPLAINT STATES TEN CLAIMS FOR RELIEF BASED ON PLAINTIFFS' FACTS.**

Plaintiffs pleaded ten claims for relief arising from this employment. First Am. Compl. ¶¶ 571-632. Of these, the most complex are the third, fourth and fifth, under the Racketeer Influenced and Corrupt Organizations Act (RICO). *Id*. ¶¶ 580-602. These three RICO claims warranted a separate section of additional facts.[1] *Id.* ¶¶ 492-570.

The third and fourth causes of action, civil RICO claims pursuant to 18 U.S.C. § 1962(c), require "conduct of such an enterprise's affairs through a pattern of racketeering activity." The fifth, a civil RICO conspiracy claim pursuant to 18 U.S.C. § 1962(d), requires "any person to conspire to violate" 18 U.S.C. § 1962(c). In compliance with these requirements, Plaintiffs have described, in separate subsections, how the Dickinson Defendants jointly conducted an enterprise through racketeering activity. First Am. Compl. ¶¶ 551-70.

Racketeering activity consists of the "commission of a predicate act." 18 U.S.C. § 1961(1). Plaintiffs' RICO claims are based on four predicate acts: (1) Visa Fraud, First Am.

---

[1] Plaintiffs include additional facts for their Fair Labor Standards Act (FLSA) claims, which are also complex. *Id.* ¶¶ 477-91.

2

Compl. ¶¶ 495-521; (2) Trafficking Victims Protection Reauthorization Act (TVPRA), *id.* ¶¶ 525-26; (3) Extortion, *id.* ¶¶ 530-33; and (4) Mail and/or Wire Fraud, *id.* ¶¶ 536-48. Four subsections review the underlying facts of these predicate acts. *See id.* Each predicate act then incorporates by reference related Plaintiff's facts. *See id.* ¶¶ 522-24, 527-29, 534-35, 549-50.

C. **PLAINTIFFS DO NOT HAVE INFORMATION ABOUT DEFENDANTS' OPERATIONS.**

As employees, Plaintiffs did not have access to all relevant information about Defendants' internal business operations. Plaintiffs all came from Chile to be cattle herders, do not speak English, and are unfamiliar with U.S. laws and customs. First Am. Compl. ¶¶ 46, 53-55. Plaintiffs have had no opportunity to conduct discovery and thus have limited information.

## II. ARGUMENT

A. **PLAINTIFFS' COMPLAINT COMPLIES WITH FED. R. CIV. P. 8(a)(2).**

Fed. R. Civ. P. 8(a)(2) serves "to give opposing parties fair notice of the basis of the claim against them so that they may respond to the complaint, and to apprise the court of sufficient allegations to allow it to conclude, if the allegations are proved, that the claimant has a legal right to relief." *Monument Builders of Greater Kan. City, Inc. v. Am. Cemetery Ass'n of Kan.*, 891 F.2d 1473, 1480 (10th Cir. 1989) (quoting *Perington Wholesale, Inc. v. Burger King Corp.*, 631 F.2d 1369, 1371 (10th Cir. 1979)). "The liberal notice pleading of Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim." *Swierkiewicz v. Sorema*, 534 U.S. 506, 514 (2002). "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Id.* (quoting *Conley v. Gibson*, 355 U.S. 41, 48 (1957)). "Rule 8

is to be liberally construed." *Hanson v. Hunt Oil Co.*, 398 F.2d 578, 581 (8th Cir. 1968). "A pleading which gives defendant fair notice of what plaintiff's claim is and the grounds upon which it rests complies with the rule." *Id.* (quoting *Conley*, 355 U.S. at 47-48).

### 1. Complaint is Necessarily Complex, Not Vague or Incomprehensible.

Fed. R. Civ. P. 8(a)(2) should be applied with logic and common sense, according to the case's complexity. *In re Catanella*, 583 F. Supp. 1388, 1401 (E.D. Pa. 1984). "The length of a pleading will depend upon a number of factors, not the least of which is the complexity of the case." *Id.* RICO complaints, due to their special complexity, may need to be longer than others. *Vicom, Inc. v. Harbridge Merchant Services, Inc.*, 20 F.3d 771, 776 (7th Cir. 1994). A RICO complaint might be prolix, lengthy and redundant, but still can satisfy Rule 8 if its allegations are relevant. *In Re Catanella*, 583 F. Supp. at 1401; *Honorable v. Easy Life Real Estate Sys.*, 182 F.R.D. 553, 562 (N.D. Ill. 1998); *see also Mountain View Pharmacy v. Abbott*, 630 F.2d 1383, 1386 (10th Cir. 1980); *In re Global Crossing, Ltd. Sec. Litig.*, 313 F.Supp. 2d 189, 212 (S.D.N.Y. 2003).

Furthermore, an extensive RICO complaint can promote judicial economy. *Fortney v. Kuipers*, No. 98 C 5387, 1999 U.S. Dist. LEXIS 2273, at *7 (N.D. Ill. Feb. 22, 1999). The lengthy *Fortney* complaint was "clear and replete with facts comprising claims of racketeering and civil conspiracy," setting forth with specificity the alleged fraudulent transactions, so that defendants could answer. *Id.* The court reasoned, "the detailed nature of [plaintiff's] complaint prompts a similarly thorough answer, thus alleviating discovery burdens." *Id.*

Defendants misunderstand the crux of the cases that they cite: the primary issue was not the length of the complaints, but that such complaints were unintelligible. Defs. Mot. at 12-13.

One court stated that "[t]he rambling and confusing complaint 'embodied virtually every conceivable element of poor pleading'" and its length was "not its main problem." *Wade v. Hopper*, 993 F.2d 1246, 1249 (7th Cir. 1993).

The Tenth Circuit similarly has deployed the drastic remedy of dismissal only when complaints are truly "incomprehensible." *Carpenter v. Williams*, 86 F.3d 1015, 1016 (10th Cir. 1996); *Burton v. Lucero*, No. 06-cv-01185, 2006 U.S. Dist. LEXIS 48034, at *3 (D. Colo. July 14, 2006) (dismissing a complaint for failure "to allege the reason or reasons [for] suing the defendant"). Short of this standard, courts have refused to dismiss even "prolix, disjointed, confusing, and at times unintelligible" complaints under Rule 8(a). *Jennings v. Emry*, 910 F.2d 1434, 1435-36 (7th Cir. 1990).

While Defendants try to characterize Plaintiffs' Complaint as "interminable" and "a mass of verbiage," Defs. Mot. at 12, 15, they fail to show that it is similarly vague and incomprehensible. Here, the facts are complex, with six Plaintiffs, seven Defendants and an elaborate system of exploitation and control of workers within the H-2A program.[2] *See supra* Sec. I.A. While the complaint is lengthy, it is precise and well-organized, with appropriate fact sections for each Plaintiff, First Am. Compl. ¶¶ 77-476, and for the FLSA and RICO claims, *id.* ¶¶ 477-491, 492-570. Each claim for relief is concise and clearly drafted. *See supra* Sec. I.B. Plaintiffs need not match facts to legal theories for Defendants. *Albiero v. City of Kankakee*, 122 F.3d 417, 419 (7th Cir. 1997); *Weston v. Pa.*, 251 F.3d 420, 429 (3d Cir. 2001).

Furthermore, Defendants' assertion that Plaintiffs have failed to link relevant facts with their RICO claims must be rejected. Defs.' Mot. at 14-15. In *Glenn v. Nat'l Bank*, 868

---

[2] *See Bautista v. Los Angeles County*, 216 F.3d 837, 840-41 (9th Cir. 2000) (In multi-party litigation, Rule 8 required that each plaintiff plead an individual statement of his own claim).

5

F.2d 368, 372 (10th Cir. 1989), there was not only a lack of a factual basis for RICO claims, but the plaintiff was characterized as "a party who was unwilling or unable to plead the cause of action himself," with a complaint that was "chaos."[3] In contrast, Plaintiffs' Complaint contains a separate section pleading facts relevant to the RICO claims, as well as incorporations by reference to each of Plaintiffs' supporting facts. First Am. Compl. ¶¶ 492-570; *see supra* Sec. I.B. The federal rules explicitly sanction such incorporation by reference, to reduce repetition and thus shorten Plaintiffs' Complaint. *Compare* Defs. Mot. at 15 *with* Fed. R. Civ. P. 10(c).[4] Like the *Fortney* complaint, Plaintiffs' detailed and well-organized Complaint should prompt a similarly detailed and well-organized answer, alleviating discovery burdens. This Complaint puts Defendants on notice of the claims against them as contemplated by Rule 8(a).

> 2. **Individual Defendants Have Adequate Notice of the Claims Against Them.**

Defendants repeatedly argue that the use of "Defendants" or "the Dickinson Defendants" to refer collectively to Defendants denies them notice of the claims against them. Defs.' Mot. at 13, 15-16, 18. Pleading is extremely permissive under Rule 8, where "[a]ll pleadings shall be so construed as to do substantial justice." Fed. R. Civ. P. 8. One purpose of notice pleading is to allow plaintiffs to sue defendants before they have all the facts so that they may use discovery and pretrial procedures to narrow the issues. *See Conley*, 355 U.S. at 47-48; *Swierkiewicz*, 534 U.S. at 512-13. "Allowing plaintiffs to develop their claims during discovery is often necessary

---

[3] *Glenn* did not discuss Fed. R. Civ. P. 8(a)(2), but rather Fed. R. Civ. P. 12(b)(6). *Id.* at 369.
[4] Defendants' cases are not fundamentally about the practice of incorporating paragraphs by reference, but rather are about incomprehensible and foundationless complaints. *Compare* Defs. Mot. at 15 *with* Vicom, 20 F.3d at 775-76; *Jennings*, 910 F.3d at 1436; *Lonesome v. Lebedeff*, 141 F.R.D. 397, 397-98 (E.D. N.Y. 1992). The complaint in *Byrne v. Nezhat* was so improper that the district court awarded Rule 11 sanctions against the plaintiff's attorney. 261 F.3d 1075, 1085 (11th Cir. 2001). Similarly, the *Meek v. Torossian* court ordered attorney's fees for unreasonable and vexatious litigation, describing the lawsuit as "devoid of any factual or legal foundation" and "an inexcusable abuse of our civil justice system." No. CIV-01-1459-F, 2002 WL 32026156, at *9 (W.D. Okla. Dec. 17, 2002). Plaintiffs' complaint, in comparison, is clearly drafted and contains solid claims.

6

because the defendant may have access to substantially more information surrounding the events in issue than the plaintiff." *Joostberns v. United Parcel Servs.*, No. 04-2370, 2006 U.S. App. LEXIS 533, at *12 (6th Cir. Jan. 9, 2006); *cf. Schwartz v. Celestial Seasonings*, 124 F.3d 1246, 1254 (10th Cir. 1997). Defendants, in fact, do not cite any cases where courts, under Rule 8(a), have disallowed pleading claims against a group of Defendants, particularly when some of the individualized information is unobtainable for Plaintiffs.[5] *Compare Bodine Produce, Inc. v. United Farm Workers Org. Comm.*, 494 F.2d 541, 561 (9th Cir. 1974). Even given the more stringent requirements of Rule 9(b), at this early stage of the litigation, claims may be pleaded against a group of Defendants when such information is not in the control or possession of Plaintiffs. *See infra* Sec. II.B.3.b.

This case does not involve a vast number of unrelated Defendants. Rather, the Dickinson Defendants are six family members and partners of VRLP; they own and operate the ranch together. First Am. Compl. ¶ 32; Defs.' Mot. Transfer Venue (Doc. 14) at 3. Together, they employed Plaintiffs and committed the acts alleged in the complaint. Without discovery, Plaintiffs cannot ascertain or allege which Dickinson Defendant contributed to committing which act in every instance. But they can and do allege that the Dickinson Defendants together participated in the hiring, firing, paying, supervising, maintaining employment records and

---

[5] Defendants cite to a trio of cases that do not support their argument. Defs.' Mot. at 13-14. First, Defendants cite to *Meek*, which is not only factually distinct, *see supra* note 4, but also contextually distinct because it addresses the award of attorney's fees for unreasonable and vexatious litigation, rather than the sufficiency of pleadings under Rule 8. Second, they cite to *Sieverding v. Colo. Bar Ass'n*, Civ. No. 02-M-1950, 2003 U.S. Dist. LEXIS 18469, at *51 (D. Colo. Oct. 14, 2003), which is a case addressing the requirements for pleading civil conspiracy under Colorado law and 42 U.S.C. § 1985, however, Plaintiffs have not brought civil conspiracy claims under either of these routes. Finally, Defendants cite to *Arena Land & Inv. Co., Inc. v. Petty*, which discusses the pleading requirements vis-à-vis individual Defendants under the heightened Rule 9(b), rather than Rule 8 standard. 906 F. Supp. 1470, 1477 (D. Utah. 1994).

setting terms and conditions of employment. *See, e.g,* Pls.' Compl. ¶¶ 32, 495-97, 526, 538-38. Defendants, therefore, have adequate notice of the allegations. *Id.*

### 3. Defendants' Drastic Request for Dismissal Should Be Denied.

Plaintiffs should have an opportunity to have their case tried on its merits rather than sidetracked with repeated procedural maneuvers. Defendants disingenuously characterize Plaintiffs' once-amended Complaint, to add an additional Plaintiff, without leave of court, as a "flagrant disregard of Rule 8(a)." Defs.' Mot. at 17. But "a court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz*, 534 U.S. at 514. Given Rule 8(a)'s liberal pleading standard, a more appropriate response to a pleading that fails to provide sufficient notice would be to move for a more definite statement under Rule 12(e). *Id.* Instead, Defendants questionably chose to seek dismissal of Plaintiffs' Complaint in its entirety. They fail to meet their burden under Rule 8(a), and their request for such a drastic remedy should be denied.[6]

### B. PLAINTIFFS HAVE COMPLIED WITH FED. R. CIV. P. 9(b) AND 12(b)(6).

Defendants argue that six claims should be dismissed because Plaintiffs failed to either meet the particularity requirements of Fed. R. Civ. P. 9(b) or failed to sufficiently plead a claim for which relief can be granted under Fed. R. Civ. P. 12(b)(6). Defendants' allegations as to the insufficiency of Plaintiffs' claims do not serve to prove that such claims should be dismissed.

Fed. R. Civ. P. 9(b) applies to "averments of fraud or mistake," and thus does not apply to most of Plaintiffs' claims. The Supreme Court has twice rejected judicial attempts to impose

---

[6] If a complaint is found to be in violation of Rule 8(a), such portions should be dismissed without prejudice so that Plaintiffs may have the opportunity to amend it. *See Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1998) ("it will generally be an abuse of discretion to deny leave to amend when dismissing a nonfrivolous original complaint on the sole ground that it does not constitute the short and plain statement required by Rule 8").

heightened pleading requirements in cases not involving fraud, warning that such "a result must be obtained by the process of amending the Federal Rules, and not by judicial interpretation." *Leatherman v. Tarrant County Narcotics Unit*, 507 U.S. 163, 168 (1993); *Swierkiewicz*, 534 U.S. at 515.

Dismissal under Fed. R. Civ. P. 12(b)(6) is a "harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Morse v. Regents of the Univ. of Colo.,* 154 F.3d 1124, 1127 (10th Cir. 1998) (internal quotation marks and citation omitted). Such a dismissal will only be found "when it appears that the plaintiff can prove no set of facts in support of the claims that would entitle him to relief, accepting the well-pleaded allegations of the complaint as true and construing them in the light most favorable to the plaintiff." *Yoder v. Honeywell, Inc.*, 104 F.3d 1215, 1224 (10th Cir. 1997) (quoting *Fuller v. Norton*, 86 F.3d 1016, 1020 (10th Cir. 1996)).

### 1. Plaintiffs' Outrageous Conduct and False Imprisonment Claims Do Not Have to Be Plead with Particularity.

Defendants' sole argument for dismissal of Plaintiffs' false imprisonment and outrageous conduct claims is that they do not meet the particularity requirements of Fed. R. Civ. P. 9 (b). Defs.' Mot. at 18-20. Neither claim has elements related to fraud or mistake, nor do Defendants purport otherwise. *See, e.g., Malone v. Signal Processing Technologies*, 826 F. Supp. 370, 378 (D. Colo. 1993) (outrageous conduct subject to Rule 8(a) pleading requirement). Not surprisingly, Defendants cannot cite to a single case applying heightened pleading requirements for false imprisonment and outrageous conduct claims.

## 2. Plaintiffs' TVPRA Claim Properly States a Claim for Relief.

Defendants also erroneously claim that Plaintiffs' TVPRA claim must meet the heightened pleading requirements of Rule 9(b). A TVPRA claim for forced labor or trafficking into servitude does not require a showing of fraud. Forced labor is defined as:

> Whoever knowingly provides or obtains the labor or services of a person – (1) by threats of serious harm to, or physical restraint against, that person or another person; (2) by means of any scheme, plan or pattern intended to cause the person to believe that, if the person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint; or (3) by means of abuse or threatened abuse of law or the legal process.

18 U.S.C. § 1589. Trafficking into servitude is defined as labor or services obtained in violation of the laws prohibiting forced labor. 18 U.S.C. § 1590. The "scheme, plan or pattern" language in 18 U.S.C. § 1589 is not equivalent to fraud. Rather, the TVPRA recognizes that labor may be induced by different kinds of coercion, including inchoate actions amounting to an indirect threat. Under the TVPRA, therefore, a litigant need not prove any fraud, but rather can prove coercion through threats, a scheme or the abuse or threatened abuse of the legal process. Furthermore, Plaintiffs Yael and Sergio Velasquez, Berrocal and Vasquez have sufficiently pleaded facts in support of their forced labor and trafficking into servitude claims. As Defendants recognize, Defs.' Mot. at 21, the TVPRA created a civil remedy for these offenses, and no preceding criminal prosecution is required.[7] 18 U.S.C. § 1595. This TVPRA civil claim seemingly is one of first impression in this circuit.

---

[7] Defendants emphasize several times that the statute is "criminal" or involves "crimes," *see, e.g.,* Def.'s Mot. at 21-22, and seem to suggest that this Court apply a higher standard than that normally applied under Fed. R. Civ. P. 12(b)(6) when determining the legal sufficiency of claims. In essence, Defendants make yet another erroneous argument in favor of applying the heightened pleading requirements of Fed. R. Civ. P. 9(b).

The legislative history indicates that "serious harm" includes nonphysical harm and "is intended to address severe forms of worker exploitation that do not rise to the level of involuntary servitude:"

> Because provisions within *section 1589* only require a showing of a threat of "serious harm," or of a scheme, plan, or pattern intended to cause a person to believe that such harm would occur, federal prosecutors will not have to demonstrate physical harm or threats of force against victims. The term "serious harm" as used in this Act refers to a broad array of harms, including both physical and nonphysical, and *section 1589*'s terms and provisions are intended to be construed with respect to the individual circumstances of victims.

H.R. Rep. No. 106-939, at 101 (2000). Threats of legal consequences, such as deportation, "clearly fall within the concept and definition of 'abuse of the legal process.'" *U.S. v. Garcia*, No. 02-CR-110S-01, 2003 U.S. Dist. LEXIS 22088, at *23 (W.D.N.Y. Dec. 2, 2003).

Plaintiffs Yael and Sergio Velasquez, who sought to leave the ranch, were forced by Defendants to keep working. First Am. Compl. ¶¶ 127-145. Defendants forced them through threats of deportation and threats of "police and immigration" surveillance of their Boulder friends. *Id.* ¶¶ 146, 148-49. Defendants forced Plaintiff Berrocal to continue working, despite a serious work-related injury, through threats of deportation. *Id.* ¶¶ 254-67, 276. Finally, after Plaintiff Vasquez temporary left his working area during non-work hours, Defendants' threats of deportation, arrest and imprisonment forced Plaintiff to continue working, and he subsequently was watched by a uniformed officer. *Id.* ¶¶ 459-68. Defendants, therefore, managed to coerce Plaintiffs' continued labor by "threats of serious harm" and "threatened abuse of law or the legal process" as defined by 18 U.S.C. §§ 1589-90.

Moreover, Defendants fail to apprehend the crux of these Plaintiffs' TVPRA claims.[8] They mistakenly argue that Plaintiffs have impermissibly expanded their wage claims. Defendants further suggest that certain facts, such as their retention of documents and pay,[9] denial of telephone access and prohibition against leaving the ranch, are irrelevant to their TVPRA claim. Def.'s Mot. at 21, 23. In fact, the lack of control by these Plaintiffs over basic aspects of their own lives demonstrates the "individual circumstances of victims" that show how the type or certain degree of harm – *i.e.,* threats of deportation or to third parties – "is sufficient to maintain or obtain a victims' labor or services." H.R. Rep. No. 106-939, at 101 (2000); *see, e.g.,* First Am. Compl. ¶¶ 91, 95-98, 105, 114-21.

3.   **Plaintiffs' RICO Claims Under 18 U.S.C. § 1962(c) Have Been Plead with Particularity and Are Supported by Sufficient Facts.**

Plaintiffs' RICO claims are based on four predicate acts. *See* Section I.B *supra*.

a.   <u>Rule 9(b) Only Applies to Civil RICO Claims Sounding in Fraud</u>.

Defendants presume that Fed. R. Civ. P. 9(b) applies to all aspects of civil RICO pleading. While the Tenth Circuit has applied the particularity requirement to civil RICO mail and wire fraud, *see, e.g., Cayman Exploration Corp. v. United Gas Pipeline Co.*, 873 F.2d 1357, 1362 (10th Cir. 1989); *Tal v. Hogan*, 453 F.3d 1244, 1263 (10th Cir. 2006), it has not otherwise addressed whether civil RICO causes of action premised on non-fraud predicate acts need to meet heightened pleading requirements.[10] Other courts have found that predicate acts that do not

---

[8] Furthermore, Defendants make a variety of allegations that these Plaintiffs "absconded," Defs.' Mot. at 21 n.18, though it is unclear as to what they are trying to argue. The fact that these Plaintiffs eventually escaped from their forced labor situations is not otherwise a defense to the TVPRA.

[9] While there is no civil remedy for document retention in a forced labor situation under 18 U.S.C. § 1592 (18 U.S.C. § 1595), such unlawful conduct is the basis of a predicate act for civil RICO purposes. *Infra* Sec. II.B.

[10] Nor has the Tenth Circuit adopted a "probable cause" standard or "bill of particulars" type requirement for civil RICO claims. *Tal*, 453 F.3d at 1262 n.17; *see also* Cayman, 873 F.2d at 1362.

have a basis in fraud, such as extortion, do not need to be pleaded with particularity under Rule 9(b). *See, e.g., McLaughlin v. Anderson*, 962 F.2d 187, 194 (2d Cir. 1992); *Rose v. Bartle*, 871 F.2d 331, 356 n.33 (3d Cir. 1989). Since the Supreme Court's rejection of judicial attempts to impose heightened pleading requirements in cases not involving fraud, *Leatherman*, 507 U.S. at 168; *Swierkiewicz*, 534 U.S. at 513, courts have declined to extend heightened pleading requirements to non-fraud claims. *See, e.g., Confre Cellars, Inc. v. Robinson*, Civ. No. 01-N-1060, 2002 U.S. Dist. LEXIS 26843, at *45-46 (D. Colo. Mar. 6, 2002). Since the extortion and TVPRA predicate acts are not fraud claims, therefore, they can be pleaded under the more liberal standard of Rule 8(a). *See supra* Sec. II.B.2.

    b.    <u>Allegations of Fraud Against the Dickinson Defendants Are Sufficient at this Pre-Discovery Stage</u>.

Defendants argue that Plaintiffs have failed to specifically allege facts "with particularity" against each of the Dickinson Defendants as required by Rule 9(b). Defs.' Mot. at 19, 27. Presumably, their argument applies to Plaintiffs' claims sounding in fraud.

The requirements of Rule 9(b), however, "may be relaxed as to matters peculiarly within the opposing party's knowledge that the pleader is not privy to at the time the document is being drafted" especially when some matters are beyond the knowledge of the pleader and can only be developed through discovery. 5A Charles Alan Wright et al., *Federal Practice and Procedure* § 1298 (3d ed. 2004). In *Vega v. Contract Cleaning Maint., Inc.*, the court stated:

> Defendants point out that Plaintiffs lumped all Defendants together in their allegations of mail and wire fraud and argue that such lumping is insufficient for pleadings of fraud. . . . Plaintiffs in this case cannot be expected to know the particular roles of each individual Defendant in perpetuation of their fraudulent scheme. Plaintiffs were unskilled janitorial and maintenance employees without access to information regarding the manner in which each particular Defendant participated in the alleged fraud.

13

No. 03-C-9130, 2004 U.S. Dist. LEXIS 20949, *39-40 (N.D. Il. Oct. 18, 2004); *see also Petri v. Gatlin*, 997 F. Supp. 956, 974-75 (N.D. Ill. 1997); *Future Tech Int'l, Inc. v. Tae Il Media, Ltd.*, 944 F. Supp. 1538, 1572 (S.D. Fla. 1996); *Creative Foods of Ind., Inc. v. My Favorite Muffin, Too., Inc.*, IP 01-0228-C-T/K, 2002 U.S. Dist. LEXIS 2815, at *15 (S.D. Ind. Jan. 14, 2002). It is not necessary, therefore, to specifically identify which defendant was responsible for each fraudulent act for Rule 9(b), as identification of their positions in the VRLP operations can be sufficient at this stage. *Hartford Fire Ins. Co. of Ill. v. Maynard*, No. 01-C-4982, 2002 U.S. Dist. LEXIS 2945, at *20 (N.D. Ill. Feb. 21, 2002).

Moreover, the Tenth Circuit has stated: "the identification of corporate insider defendants without matching specific misstatements with specific officers or directors does not violate Rule 9(b)." *Schwartz*, 124 F.3d at 1254. In particular, "[i]dentifying the individual sources of statements is unnecessary when the fraud allegations arise from misstatements or omissions in group-published documents such as annual reports, which presumably involve collective actions of corporate directors or officers." *Id.*

At this stage, Plaintiffs lack information about Defendants' business operations. *See* Sec. I.C, *infra*. Plaintiffs' claims related to the predicate act of mail and wire fraud are alleged against all Dickinson Defendants because Plaintiffs do not possess the relevant information about each Defendant's participation. Plaintiffs first allege that the Dickinson Defendants had a fraudulent scheme of issuing materially false and misleading monthly pay statements. First Am. Compl. ¶¶ 537-39. Plaintiffs do not know who was responsible for determining or generating the contents of pay statements. Furthermore, Defendants' pay statements are "group-published" documents, as in *Schwartz*, which are presumed to involve the collective actions of individual Defendants, all

VRLP partners. 124 F.3d at 1254. As in *Vega*, Plaintiffs' group allegations about the Dickinson Defendants' fraudulent pay scheme should suffice. 2004 U.S. Dist. LEXIS 20949, at *39-40.

Second, Plaintiffs allege that the Dickinson Defendants had a fraudulent recruitment scheme to persuade Plaintiffs to come to the U.S. *Id.* ¶¶ 540-48. Plaintiffs have knowledge that such statements were made by Victor Tocanini, a recruiting agent for the Dickinson Defendants. *Id.* ¶¶ 540-42. Plaintiffs, however, do not possess information on the business arrangements made between Mr. Tocanini and the Dickinson Defendants, or which Dickinson Defendants were involved. Allegations of an agent's fraudulent statements made at the behest of principals are sufficient for identifying the parties' role in the fraud. *Gunderson v. ADM Investor Servs., Inc.*, No. 99-4032, 2000 U.S. App. LEXIS 20971, at *6-7 (8th Cir. Aug. 16, 2000).

Finally, Plaintiffs' allege the predicate act of visa fraud against all Dickinson Defendants for false statements in their H-2A labor certification applications. First Am. Compl. ¶¶ 495-522. Defendant Jean Dickinson signed all applications, *id.* ¶¶ 510, 515, 517, 520, and an immigration attorney, Anne Filbert, filed them, *id.* ¶ 497. Plaintiffs otherwise have no knowledge of the particular roles of each individual Defendant, including who within VRLP designed the false job offer or who directed Ms. Filbert in the filing of these fraudulent applications. *Id.* ¶ 496. These labor certification applications can also be considered to be "group-published" documents, so that such false statements contained therein can be attributed to all of the Dickinson Defendants. Since the exact involvement of each of the Dickinson Defendants can only be developed through discovery, Plaintiffs' allegations against the Dickinson Defendants should suffice for visa fraud.

c. <u>Plaintiffs Have Sufficiently Pleaded All Predicate Acts</u>.

While Defendants seek a facile dismissal of all of Plaintiffs' civil RICO claims as a matter of law, Defs.' Mot. at 25-28, they largely fail to explain how such claims are deficient.[11]

With respect to the TVPRA predicate acts, Plaintiffs have adequately pleaded their TVPRA claims of forced labor and trafficking into servitude. *See* Sec. II.B.2 *infra*. Moreover, an additional violation under the TVPRA, 18 U.S.C. § 1592, constitutes a predicate act, when a person "removes, confiscates, or possesses" any passport or immigration documents during the course of committing forced labor in violation of 18 U.S.C. §§ 1589-90. The Dickinson Defendants held the passports and immigration documents of Plaintiffs Yael and Sergio Velasquez, Berrocal and Vasquez while committing forced labor in violation of 18 U.S.C. § 1592.[12] First Am. Compl. at ¶¶ 91-95, 157, 180-87, 231-35, 287, 418-22. The H-2A regulations unequivocally do not sanction employers to retain employees' personal identification documents. Defendants cannot cite any specific provision of law authorizing an employer to do so, and fail to recognize that only government officials have authority to take passports from their nationals. *Compare* Defs.' Mot. at 23-24 *with* 22 C.F.R. §§ 51.72; 51.76. Despite Defendants' sanguine belief, they do not have the police power to enforce federal laws.[13]

---

[11] Civil RICO claims can be brought by a private right of action pursuant to 18 U.S.C. § 1964(c) and do not require a precedent criminal conviction. Defs.' Mot. at 25 n.26. Moreover, any assertion by Defendants that such claims may not be brought against "legitimate ranching businesses" is unfounded. *Id.* at 26. Defendants cannot cite to a single case that prohibits the use of civil RICO claims against entities that are not considered "organized crime." Federal courts have considered such civil RICO claims brought against various entities, including "legitimate businesses."

[12] Defendants are seemingly confused, attempting to refute this claim by stating that personal documentation was eventually returned after the termination of the employment, Defs.' Mot. at 24, albeit sometimes only after attorney intervention. However, 18 U.S.C. § 1592 only requires an allegation that such documents have been held during an act of forced labor - which for Plaintiffs was during their employment.

[13] Defendants seem to derive this authority from the notification requirement that they have when H-2A workers leave their employ, 20 C.F.R. § 655.102(b)(11). Such basic notification requirements, however, do not extend to employer enforcement of federal immigration laws by retaining documentation.

16

With respect to mail and wire fraud, Defendants set forth the standard required for adequately pleading such a claim, Defs.' Mot. at 25-26, but do not make any argument about how Plaintiffs' claims are legally insufficient. Plaintiffs have sufficiently alleged two factual scenarios that meet the nine-part test for mail and/or wire fraud claims. *Tal*, 453 F.2d at 1263. First, they show the Dickinson Defendants' scheme to defraud workers by systematically paying wages that violated FLSA. First. Am. Compl. ¶¶ 537-39; 549-50.[14] Second, Plaintiffs Yael Velasquez, Fuentes and Vasquez demonstrate Defendants' fraudulent recruitment scheme by which they persuaded Plaintiffs to come to the U.S. and work. *Id.* ¶¶ 540-50.[15]

Defendants do not mention the predicate acts consisting of visa fraud and extortion, *see id.* ¶¶ 495-524; 530-35, presumably admitting that these acts have been sufficiently pleaded as a matter of law.

### 4. Plaintiffs' Civil RICO Conspiracy Claims Under 18 U.S.C. § 1962(d) Have Been Properly Pleaded.

While a civil RICO conspiracy claim must have some factual basis, such allegations are measured under the more liberal Fed. R. Civ. P. 8(a) pleading standard. *Rose*, 871 F.2d at 356 n.33; *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 26 n.4 (2d Cir. 1990). Defendants fail to cite to any cases applying Rule 9(b) to civil RICO conspiracy claims. Defs.' Mot. at 18.

Defendants incorrectly argue that Plaintiffs have failed to sufficiently plead allegations that each Dickinson Defendant agreed to commit two predicate acts in furtherance of the conspiracy. Defs.' Mot. at 28. In *Salinas v. U.S.*, the Supreme Court elucidated the standard for

---

[14] Plaintiffs received materially false and misleading monthly pay statements and were deceived about the proper wage for the work they were performing. *Id.* ¶ 108, 198, 246, 338, 389, 432. An equivalent pleading of a fraudulent payroll scheme has been sufficient to survive a motion to dismiss. *Vega*, 2004 U.S. Dist. LEXIS 20949, at *37-38.
[15] By false statements and omissions, these Plaintiffs were deceived about material aspects of the job and decided to come to the U.S. *Id.* ¶ 77-82; 290-94; 404-408.

17

a RICO conspiracy. 522 U.S. 52 (1997). A RICO conspiracy may exist, even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense:

> One can be a conspirator by agreeing to facilitate only some of the acts leading to the substantive offense. It is elementary that a conspiracy may exist and be punished whether or not the substantive crime ensues, for the conspiracy is a distinct evil, dangerous to the public, and so punishable in itself. It makes no difference that the substantive offense under subsection (c) requires two or more predicate acts. The interplay between subsections (c) and (d) does not permit us to excuse from the reach of the conspiracy provision an actor who does not himself commit or agree to commit the two or more predicate acts requisite to the underlying offense.

*Id.* at 65 (citations omitted). Thus, there is no requirement that Plaintiffs plead that each individual Defendant agreed to commit two predicate acts.

Moreover, even presuming *arguendo* that Plaintiffs' underlying RICO violations fail, their conspiracy claim does not necessarily fail. In *Salinas*, the Supreme Court recently upheld a conviction for RICO conspiracy despite an acquittal on the underlying RICO charge under 18 U.S.C. § 1962(c). *Compare Salinas*, 522 U.S. at 66 *with Tal,* 453 F.3d at 1270.

Plaintiffs have pleaded such a claim in accordance with the principles of *Salinas*.[16]

### 5. Colorado Wage Claim Act Can Apply to Individual Partners.

Defendants' analysis of the Colorado Wage Claim Act ("CWCA") as applied to corporations and corporate officers is inapposite. Defendant VRLP is a limited partnership, not a corporation, and the other Defendants are partners, not corporate officers. *See* Defs.' Mot.

---

[16] Each Dickinson Defendant was involved in the furtherance of the conspiracy – *e.g.,* Defendant Jean Dickinson signed the fraudulent visa applications, First Am. Compl. ¶¶ 510, 515, 520; Defendants Wright, Marc, Pauline, T. Wright and DeAnn Dickinson committed various acts that relate to forced labor and unlawful retention of documents, *id.* ¶¶ 128-51, 418, 446, 459-67. During the time when these predicate acts were committed, Plaintiffs allege that each Dickinson Defendant personally participated in the operation and management of VRLP by facilitating their unlawful worker exploitation scheme. *Id.* ¶¶ 553-65. Plaintiffs have also alleged that the Dickinson Defendants agreed to the commission of predicate acts, though on information and belief. *Id.* ¶ 600; *see supra* Sec. I.C.

Transfer Venue (Doc. 14) at 3; Pls.' Resp. Defs.' Mot. Transfer Venue (Doc. 21) Ex. E.

The CWCA defines an employer as: "every person, firm, partnership, association, corporation, migratory field labor contractor or crew leader, receiver, or other officer of court in Colorado, and any agent or officer thereof, of the above mentioned classes, employing any person in Colorado…." Colo. Rev. Stat. § 8-4-101(5).

Limited Partnerships are completely distinct entities from Corporations and the responsibilities and liabilities of partners differ from those of corporate officers. *See generally* Colo. Uniform Limited Partnership Act of 1986, Colo. Rev. Stat. § 7-62-101 *et seq.* and Colo. Corporations and Associations Act, Colo. Rev. Stat. § 7-90-101 *et seq.*

Defendants have cited no cases establishing that partners are not "employers" as defined by the CWCA, nor do any such cases appear to exist. Thus, by the plain language of the CWCA, and in the absence of contrary authority, all Defendants should be considered employers responsible for the payment of wages when due.

### III. CONCLUSION

WHEREFORE, Plaintiffs respectfully request that Defendants' Motion to Dismiss be denied. Plaintiffs' claims should be heard on the merits. Defendants fail to meet their burden of demonstrating that the drastic remedy of dismissal is appropriate.

Dated this 26th day of September 2006.

    Respectfully submitted,

    s/Kimi Jackson_____
    Kimi Jackson
    **Migrant Farm Worker Division**
    **Colorado Legal Services**

1905 Sherman Street, Suite 400
Denver, CO  80203
Telephone: (303) 866-9366
FAX: (303) 830-7860
E-mail: kjackson@colegalserv.org

**Certificate of Service**

I hereby certify that on September 26, 2006, I electronically filed the foregoing with the Clerk of Court using the CM/EFC system, which will send notification of such filing to the following e-mail addresses:

lschluter@lawincolorado.com
mshowalter@lawincolorado.com
jlee@colegalserv.org
pmedige@colegalserv.org
kwalker@colegalserv.org
kjackson@colegalserv.org

 s/Kimi Jackson
Kimi Jackson
Attorney for Plaintiffs
**Colorado Legal Services**
**Migrant Farm Worker Division**
424 Pine Street, Suite 105
Fort Collins, CO  80524-2421
Tel. (970) 407-7018
Fax (970) 493-3758
kjackson@colegalserv.org