IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cv-01043-WYD-MJW

ELIESER YAEL VELASQUEZ CATALAN;
SERGIO VELASQUEZ CATALAN;
HUMBERTO HERALDO BERROCAL ORTIZ;
LUIS ALEJANDRO FUENTES SANDOVAL; and
OSCAR SANDOVAL POBLETE,

    Plaintiffs,

v.

VERMILLION RANCH LIMITED PARTNERSHIP;
A. WRIGHT DICKINSON, III;
PAULINE DICKINSON;
DEANN DICKINSON;
T. WRIGHT DICKINSON;
MARC DICKINSON; and
JEAN MARIE DICKINSON,

    Defendants.

**ORDER**

THIS MATTER is before the Court on Defendants' Motion to Change Venue [Docket # 14] filed on August 4, 2006; Defendants' Motion to Dismiss [Docket # 27] filed on September 6, 2006; and Defendants' Motion to Disqualify Colorado Legal Services [Docket # 43] filed on September 26, 2006. I will first address Defendants' Motion to Change Venue and then move on to Defendants' Motion to Dismiss and Motion to Disqualify Colorado Legal Services.

I.  DEFENDANTS' MOTION TO CHANGE VENUE

I first address Defendants' Motion to Transfer the Case to the United States District Court for the District of Wyoming, wherein Defendants argue that venue should

be transferred pursuant to 28 U.S.C. § 1404(a). [Docket # 41]. 28 U.S.C. § 1404(a) provides as follows: "for the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." This statute vests the Court with the discretion to transfer cases to other districts to prevent unnecessary inconvenience and expense. *Consumers Gas & Oil, Inc. v. Farmland Industries, Inc.*, 815 F. Supp. 1403 (D. Colo. 1992). Congress enacted the statute "as a 'federal housekeeping measure,' allowing easy change of venue within a unified federal system." *Chrysler Credit Corp. v. County Chrysler, Inc.*, 928 F.2d 1509, 1515 (10th Cir. 1991) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 (1981)).

Although Congress drafted section 1404(a) in accordance with the doctrine of forum non conveniens, "the statute was intended to revise rather than merely codify the common law." *Chrysler Credit Corp. v. County Chrysler, Inc.*, 928 F.2d at 1515. District courts therefore enjoy greater discretion to transfer a case pursuant to section 1404(a) than to dismiss the action based upon the forum non conveniens doctrine. *Id.* Plaintiff's choice of forum is given considerable weight. *Texas E. Transmission Corp. v. Marine Office-Appleton & Cox Corp.*, 579 F.2d 561, 567 (10th Cir. 1978). However, Plaintiffs' choice of forum is given less weight when the plaintiff is not a resident of the chosen forum. *See Bailey v. Union Pacific Railroad*, 364 F.Supp.2d 1227, 1230 (D. Colo. 2005).

The moving party bears the burden of showing the existing forum is inconvenient. *Chrysler Credit Corp. v. County Chrysler, Inc.*, 928 F.2d at 1515

(citations omitted). "Unless the balance is strongly in favor of the movant the plaintiff's choice of forum should rarely be disturbed." *William A. Smith Contracting Co. v. Travelers Indem. Co.*, 467 F.2d 662, 664 (10th Cir.1972). This Court has previously held that "transfer of civil actions is not favored where the transfer would serve only to shift the burden of inconvenience from one party to another." *Greenberg v. Greenberg*, 954 F. Supp. 213 (D. Colo. 1997)(citing *Decker Coal v. Commonwealth Edison Co.*, 805 F.2d 834 (9th Cir. 1986).

The court must "adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quotation omitted). "The traditional factors that a District Court weighs in considering requests to transfer under 28 U.S.C. § 1404(a) are: (1) convenience to the parties; (2) convenience of the witnesses; and (3) the interests of justice." *Metabolite Laboratories, Inc. V, Amerisourcebergen Corp*, 2006 WL 1581750 (D. Colo. 2006)(citing *Parsons v. Chesapeake & Ohio Railway Co.*, 375 U.S. 71 (1963).

A. <u>Application of the Factors</u>

1. <u>Convenience of the Parties</u>

Balancing the relative convenience of the parties, Defendants fail to show that the District of Wyoming would be more convenient. Three out of six individual Defendants live in Colorado. Additionally, while VRLP is a Wyoming partnership, VRLP operates as a Colorado business and is subject to service at 14883 CR 10 N, Maybell, Colorado, 81640. For purposes of venue, "a corporate defendant resides in any judicial district in which it is subject to personal jurisdiction, as construed to mean any state in which it is authorized to do business." *Graf v. Tastemaker*, 907 F.Supp. 1473, 1474 (D. Colo. 1995). Accordingly, the majority of Defendants reside in Colorado.

Defendants argue that traveling to Denver for a two week trial will create a hardship because of their ranching operations. It is important to recognize, however, that the distance from VRLP to Cheyenne is similar to the distance from VRLP to Denver. Defendants' Maybell, Colorado location is approximately 227 miles from Denver and approximately 320 miles from Cheyenne. Defendants' location in Rock Springs, Wyoming is approximately 351 miles from Denver and 257 miles from Cheyenne. I do not find that a difference of, at most, approximately 100 miles is enough of an additional burden on Defendants to warrant a transfer of venue in this case.

Plaintiffs, on the other hand, are income eligible for Colorado Legal Services (counsel of last resort for low-income Coloradans). Plaintiffs assert that if this case is transferred, they will be forced to locate local Wyoming counsel. Consequently, removing this case to Wyoming would create a financial burden for Plaintiffs.

### 2. Convenience of the Witnesses

In weighing the convenience of the witnesses, Courts have considered: whether or not the prospective witness will be material, *Scheidt v. Klein*, 956 F.2d 963, 966 (10th Cir. 1992), and whether or not the prospective witnesses would be unwilling to come to the trial in the inconvenient forum, *WestAmerica v. First Nationwide Savings*, 1987 WL 18690 (D.Colo. 1987). Both Defendants and Plaintiffs list potential witnesses who are located in the respective forums. From the record before me, Defendants have not shown that the convenience of witnesses warrants a transfer of venue in this case.

Defendants first assert that employees of the Wyoming State Workforce Agency ("WSWA") are needed as witnesses. The WSWA was the entity that processed Plaintiffs' H-2A applications and performed onsite inspections at the Ranch every three years. Defendants identify five potential witnesses that work in the WSA office in Rock Springs, Wyoming. Defendants also identify Margaret Blodgett (the manager of the

State of Wyoming Department of Workforce Services office in Rawlins, Wyoming) as a potential witness. It is unclear, however, which of these six witnesses are necessary for the proof of this case. Further, Defendants have failed to provide evidence to this Court that these witnesses would be unwilling to come to Denver to provide testimony in this case.

Defendants also identify as witnesses: two employees of the medical clinic in Rock Springs, an employee of Union Telephone, employees of Rock Springs National Bank, and Defendants' accountant–Leslie Henderson, CPA. The medical employees treated two of the Plaintiffs when they were injured on the ranch. Defendants assert the employee from the phone company can testify as to Plaintiffs' access to the telephones. The employees from Rock Springs National Bank set up the Plaintiffs' accounts. Finally, Mr. Henderson and his firm served as accountants and advisors to defendants and prepared tax returns for H-2A employees.

Plaintiffs, on the other hand, assert that VRLP filed labor certification applications in the Denver Department of Labor office. In addition, Plaintiffs list as a witness Colorado Springs attorney, Anne Filbert, who was hired by Defendants to prepare the labor applications. Plaintiffs also list representatives of Pinnacol Assurance of Colorado who have information regarding the worker's compensation coverage and claims. Plaintiffs list unidentified employees of Brown's Park Wildlife Refuge, the U.S. Department of Labor, and representatives of U.S. Immigration and Customs Enforcement, who may have information regarding the claims in this action. Finally, Plaintiffs identify two individuals, Ms. Wald and Mr. Garibotti (both of whom are located in Boulder), who spoke with Plaintiffs during the relevant time period about the events that occurred on the ranch and have knowledge of ranch operations and employment conditions.

The last witness identified by Plaintiffs is Dr. Dawn Thilmany. Dr. Thilmany is Plaintiffs' expert witness and is located Colorado State University. The location of an expert witness is a factor to consider when conducting a Section 1404(a) balancing test. *See Palace Exploration Co. v. Petroleum Development Co.*, 316 F.3d 1110 (10th Cir. 2003).

On balance, I find there are potential material witnesses in both Colorado and Wyoming. Accordingly, a transfer of venue is not warranted by applying this factor alone.

### 3. Interest of Justice

"Factors traditionally considered in an 'interest of justice' analysis relate to the efficient administration of the court system." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220 (7th Cir. 1986). As part of this analysis, a court may consider the docket conditions of the transferee and transferor districts. *Furr*, 2005 WL 1801627, at *5. In support of their motion, Defendants emphasize that cases in Wyoming proceed to trial more quickly than in Colorado and the average number of pending cases per judge is much lower in Wyoming. On the other hand, Plaintiffs point out that the median time from filing to disposition of a case in Colorado is shorter than in Wyoming. I find that the comparative docket congestion does not tip the scale in favor of one forum over the other.

Additionally, "there is a local interest in having localized controversies decided at home." *Bailey v. Union Pacific Railroad*, 364 F.Supp.2d 1227, 1233 (D.Colo. 2005) (quoting *Gulf Oil Corp v. Gilbert*, 330 U.S. 501, 508-9 (1947). As I explained above, the alleged relevant events which lead to the filing of this action occurred in both Wyoming and Colorado. Plaintiffs flew from Chile to Rock Springs, Wyoming. Upon their arrival, Plaintiffs were taken to Rock Springs National Bank and the Rock Springs Social Security Office. However, Plaintiffs allege that five out of six Plaintiffs lived and worked

in Colorado during the period relative to the present action. Consequently, I find the local interest of Wyoming does not outweigh the local interest of Colorado.

On balance, granting Defendants Motion to Transfer in this case would merely shift the inconvenience from one party to the other. Applying the three factors to the case at hand, Plaintiff's choice of forum weighs in favor of this jurisdiction. On the record before me, I find that Defendants have failed to meet their burden and have not shown that transfer is warranted in this case pursuant to 28 U.S.C. § 1404(a).

II. <u>MOTION TO DISMISS</u>

I will next address Defendants' Motion to Dismiss. [Docket # 27]. Defendants request that Plaintiffs' Complaint be dismissed pursuant to FED. R. CIV. PRO. 8(a), 9(b), and 12(b)(6).

Plaintiffs' initial Complaint was filed on June 1, 2006. [Docket # 1]. On July 20, 2006, Plaintiffs filed a First Amended Complaint, adding one additional claim. [Docket # 13]. While the Amended Complaint is lengthy (74 pages), some of the length is explained by the fact that there are six individual Plaintiffs, six individual Defendants, and one partnership Defendant, as well as a total of Ten Claims for Relief.

Approximately 65 pages of the Complaint are dedicated to the Statement of Facts. Plaintiffs statement of facts describe the relevant events in chronological order. There is some repetition of events; however, this repetition is a result of Plaintiffs separating out a statement of the relevant events that occurred to each individual Plaintiff.

Specifically, Plaintiffs allege claims for: violations of Fair Labor Standards Act, violations of Trafficking Victims Protection Reauthorization Act ("TVPRA"), violations of Racketeer Influenced and Corrupt Organizations Act ("RICO") §1962(c) (with the corporate Defendant as the enterprise), violations of RICO §1962(c) (with the corporate Defendant, Anne Filbert and Victor Tocanini as the enterprise), violations of RICO

§1962(d) Conspiracy, violations of Colorado Wage Claims Act, Breach of Contract, False Imprisonment, Outrageous Conduct, and Promissory Estoppel.

    A. Federal Rule of Civil Procedure 8(a)

Defendants first argue that the entire Complaint should be dismissed because the Complaint violates FED. R. CIV. PRO. 8(a). Rule 8(a) states that a complaint "shall contain (1) a short and plain statement of grounds upon which the court's jurisdiction depends, . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks." "The primary purpose of the [Rule 8] provisions is rooted in fair notice: Under Rule 8, a complaint 'must be presented with intelligibility sufficient for a court or opposing party to understand whether a valid claim is alleged and if so what it is.'" *Vicom, Inc. v. Harbridge Merchant Serv., Inc.*, 20 F.3d 771, 775-76 (7th 1994). FED. R. CIV. PRO. 8(a) serves "to give opposing parties fair notice of the basis of the claim against them so that they may respond to the complaint, and to apprise the court of sufficient allegations to allow it to conclude, if the allegations are proved, that the claimant has legal right to relief." *Monument Builders of Greater Kan. City, Inc. v. Ame. Cemetery Ass'n of Kan.*, 891 F.2d 1473, 1480 (10th Cir. 1989).

I find that, although the Complaint is lengthy, it is intelligible and well-organized. While the majority of the Complaint is a general "Statement of Facts," the events are recited in chronological order and are separated out according to each Plaintiff. Further, in the "Statement of Facts," each predicate act supporting Plaintiffs' RICO claims are separately addressed. The length of the Complaint appears to be a result of the number of Plaintiffs and complexity of the claims, rather than a problem with the Complaint being disorganized and repetitive.

"[A] pleading which gives defendant fair notice of what plaintiff's claim is and the grounds upon which it rests complies with the rule." *Hanson v. Hunt Oil Co.*, 398 F.2d

578, 581 (8th Cir. 1968). Despite its length, I find Plaintiffs' Complaint gives the Defendants in this case fair notice of Plaintiffs' claim and satisfies the requirements of FED. R. CIV. PRO. 8(a). Consequently, I deny Defendants' request for relief pursuant to Rule 8(a).

    B. <u>Federal Rule of Civil Procedure 9(b)</u>

Defendants also urge this Court to apply a heightened pleading requirement to Plaintiffs claims under RICO, TVPRA, false imprisonment, and outrageous conduct pursuant to FED. R. CIV. PRO. 9(b). Rule 9(b) requires that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." However, "Rule 9(b) does not require that a complaint set forth detailed evidentiary matter as to why particular defendants are responsible for particular statements, or that the allegations be factually or legally valid." *Schwartz v. Celestial Seasonings, Inc*, 124 F.3d 1246, 1253 (10th Cir. 1997). "Instead, Rule 9(b) requires that the pleadings give notice to the defendants of the fraudulent statements for which they are responsible." *Id.* In other words, the complaint must give the defendants notice of what they are charged with, and "[n]o more is required by Rule 9(b)". *Id.* This Court has explained the purpose of Rule 9(b) as follows:

> The point of the rule is to provide enough notice to each defendant of the misrepresentations the defendant made so that he can answer and otherwise defend himself. . . . The rule does not require extensive factual pleading. As an exception to rule eight's requirement that pleadings should be simple, concise and direct, rule 9 is read restrictively, not expansively. . . . It does not require plaintiffs to plead extensive facts. It only requires that plaintiff prove the circumstances of the fraud.

*Gardner v. Investors Diversified Capital, Inc.*, 805 F. Supp. 874, 876 (D. Colo. 1992).

        a. <u>RICO claims</u>

Plaintiffs allege RICO claims pursuant to two different sections – 18 U.S.C. § 1962(c) and 18 U.S.C. § 1962(d). A RICO plaintiff alleging a violation of 1962(c) must

show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Vicom v. Harbridge Merchant Serv., Inc.*, 20 F.3d 771, 778 (7th Cir. 1993). A RICO plaintiff alleging a violation of 1962(d), on the other hand, must show a conspiracy to violate section 1962(a), (b), or (c).

Plaintiffs assert RICO claims identifying two distinct enterprises: the Third Claim for Relief identifies VRLP as the enterprise; and the Fourth Claim for Relief identifies VRLP, Anne Filbert, and Victor Tocanini, as the enterprise. Section 1961(4) broadly defines an enterprise as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). I find that the Complaint has sufficiently plead the two alleged enterprises.

In order to prove that there is a "pattern"–the third element of the claim–the Supreme Court has stated that "a plaintiff... must show that the racketeering predicates are related *and* that they amount to or pose a threat of continued criminal activity." *Id.* (quoting *H.J. Inc. V. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989)). Plaintiffs properly plead this element in the First Amended Complaint. [Docket # 13, ¶¶ 566-570].

The fourth element of a RICO claim requires a Plaintiff plead "at least two predicate acts of racketeering committed within a ten-year period." 18 U.S.C. 1961(5). To establish the requisite predicate acts, the plaintiff must plead and prove each element of the racketeering offense. Plaintiffs allege, as predicate acts to their RICO claims, violations of: visa fraud, violations of the Trafficking Victims Protection Act ("TVPRA"), unlawful conduct with documents, extortion and/or criminal extortion, mail and/or wire fraud.

In the Tenth Circuit, it is clear that a plaintiff must plead any predicate acts sounding in fraud with particularity. *Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357 (10th Cir. 1989)("we hold that Rule 9(b) requires particularity in

pleading RICO mail and wire fraud"). What remains unclear in the Tenth Circuit is whether or not Rule 9(b) also applies to predicate acts not sounding in fraud (in this case, the predicate acts of extortion or human trafficking). *Compare Arena Land & Investment Co. v. Petty*, 906 F.Supp. 1470)(D. Utah 1994)(applying the requirements of Rule 9(b) to each element of a RICO violation, as well as the predicate fraud allegations), *with McLaughlin v. Anderson*, 962 F.2d 187, 194 (2nd Cir. 1992) (holding that 9(b) only applies when the predicate act involves fraud, not when the predicate act is extortion).

### 1. Predicate Acts: Fraud

Several of Plaintiffs' predicate acts sound in Fraud. In general, actionable fraud consists of (1) a representation, (2) that is false, (3) that is material, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) the speaker's intent it be acted on, (6) the hearer's ignorance of the falsity of the representation, (7) the hearer's reliance, (8) the hearer's right to rely on it, and (9) injury. *Tal v. Hogan*, 453 F.3d 1244, 1263 (10th Cir. 2006). "Failure to adequately allege any one of the nine elements is fatal to the fraud claim." *Id*.

I find that the predicate acts of fraudulent pay statements and Visa Fraud are plead with sufficient particularity to survive a Rule 9(b) challenge. The Complaint identifies each individual Defendant as a partner of VRLP. Plaintiffs' claim for Visa fraud alleges that "the Dickinson Defendants collectively decided to apply for H-2A visas for their workers." [Docket # 13 ¶ 496]. The Complaint goes on to detail specific facts that would tend to show these applications are fraudulent and identifies Jean Dickinson as the signatory of these applications. Similarly, the Complaint alleges that the Dickinson Defendants as a group issued pay statements which contained fraudulent misrepresentations. [Docket # 13 ¶ 537-39].

Defendants argue that the Complaint is insufficient because Plaintiffs have not identified how each particular Defendant participated in the fraud. In *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246 (10th Cir. 1997), however, the court held that the complaint's failure to match specific statements with specific corporate insiders did not violate Rule 9(b). "Identifying the individual sources of statements is unnecessary when the fraud allegations arise from misstatements or omissions in group-published documents such as annual reports, which presumably involve collective actions of corporate directors or officers." *Id.* at 1254. Visa applications and pay statements are similar to the group published documents in *Schwartz*. Defendants are all partners of VRLP and, although only one of the partners signed the documents, it is alleged that the others knew of and participated in creating and filing these documents as well. Consequently, I find that Plaintiffs have satisfied rule 9(b) for the predicate acts involving fraud.

2. Predicate Acts: Extortion and TVPRA

As mentioned above, it is unclear whether or not this Court must scrutinize the underlying predicate acts not sounding in fraud pursuant to Rule 9(b). Defendants recognize that the Tenth Circuit has never adopted a rule that all predicate acts of a RICO claim must be plead with particularity. However, Defendants cite to a district court case that did require a Plaintiff to plead non-fraud predicate acts with particularity. *Bache Halsey Stuart Shields v. Tracy Collins Bank & Trust Co.*, 558 F. Supp. 1042 (D. Utah 1983). This case has been criticized by other courts. *See Tryco Trucking Co. v. Belk Store Servs., Inc.*, 608 F.Supp. 812, 815 (D.C.N.C. 1985) (disagreeing with *Bache* and holding that this specificity was not required at the pleadings stage), *see also Cincinnati Gas & Elec. Co.*, 656 F.Supp 49, 77 (S.D.Ohio 1986). Despite this uncertainty, it is unnecessary for me to decide whether or not Rule 9 applies to the predicate acts not sounding in fraud as I find that, even applying the heightened

-12-

standard, Plaintiffs have sufficiently plead the predicate acts of extortion [Docket # 13 ¶¶ 530-535] and human trafficking [*Id.* ¶¶ 525-529].

### b. Trafficking Victim Protection Reauthorization Act claims

Defendants also argue that the two separate claims for relief pursuant to the TVPRA must be dismissed pursuant to Rule 9(b). Defendants urge this court to apply Rule 9(b)'s heightened pleading standard to Plaintiffs' claims for relief under the TVPRA, yet Defendants do not provide any case law supporting this position. Rule 9(b) is limited to "averments of fraud or mistake." The Supreme Court has twice rejected invitations to expand the scope of Rule 9(b). Swierkiewicz v. Sorema N.A., 534 U.S. 506, 515 (2002); Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163 (1993). However, as explained above, I find the Complaint sufficiently pleads the claims pursuant to the TVPRA under either the Rule 8 or Rule 9 pleading standard.

### c. False Imprisonment and Outrageous Conduct

Defendants ask this court to dismiss the claims for False Imprisonment and Outrageous Conduct pursuant to Rule 9(b). Once again, Defendants do not cite to any cases which would support a finding that the heightened pleading standard applies to these claims. I find that Plaintiffs' claims for False Imprisonment and Outrageous Conduct are not subject to the heightened pleading standard of FED. R. CIV. PRO. 9(b). Neither False Imprisonment or Outrageous Conduct requires a showing of fraudulent conduct. Consequently, Defendants' request to dismiss these two claims pursuant to Rule 9(b) is denied.

### 3. Federal Rule of Civil Procedure 12(b)(6)

In the alternative, Defendants ask this Court to dismiss Plaintiffs' claims for TVPRA and RICO for failure to state a claim. In ruling on a FED. R. CIV. PRO. 12(b)(6) motion to dismiss, the court "'must accept all the well-pleaded allegations of the

complaint as true and construe them in the light most favorable to the plaintiff.'" *David v. City and County of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996), *cert. denied*, 522 S.Ct. 858 (1997) (quoting *Gagan v. Norton*, 35 F.3d 1473, 1474 n. 1 (10th Cir. 1994)). "A complaint may be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) only 'if the plaintiff can prove no set of facts to support a claim for relief.'" *Id.* (quoting *Jojola v. Chavez*, 54 F.3d 488, 490 (10th Cir. 1995)). If, accepting all well-pleaded allegations as true and drawing all reasonable references in favor of plaintiffs, it appears beyond doubt that no set of facts entitle plaintiffs to relief, then the court should grant a motion to dismiss. *See Tri-Crown, Inc. v. American Fed. Sav. & Loan Ass'n*, 908 F.2d 578, 582 (10th Cir. 1990).

### a. TVPRA

Defendants argue that Plaintiffs fail to state separate claims for violations of TVPRA, 18 U.S.C. §§ 1589 and 1590, pursuant to Fed. R. Civ. Pro. 12(b)(6). As support for this argument, Defendants point out that Plaintiffs fail to allege they were threatened with physical violence or harmed physically. The plain language of the TVPRA does not require a showing that Plaintiffs (or, in a criminal case, the victims) were actually harmed physically. It is enough to state a claim for a violation of the TVPRA if it is alleged that plaintiffs were forced to work by "threatened abuse of law or the legal process." 18 U.S.C. § 1589. The Complaint alleges that the four Plaintiffs stating a claim under TVPRA were threatened with deportation if they did not remain on the Ranch. Accordingly, I find that the First Amended Complaint states a claim for relief pursuant to 18 U.S.C. §§ 1589 and 1590.

### b. RICO

Defendants argument that Plaintiffs fail, as a matter of law, to state a claim for RICO mirrors that of their above argument that Plaintiffs fail to properly plead the RICO claims pursuant to Rule 9. As explained above, Plaintiffs sufficiently plead all elements

of the RICO claims, including the pleading of the elements of the predicate acts of Visa Fraud, Mail Fraud, and TVPRA.

### 4. Wage Claim Act

Finally, Defendants argue that Plaintiffs' claims pursuant to the Colorado Wage Claim Act ("CWCA") must be dismissed against the individual Defendants. Defendants assert that there is no individual liability for unpaid wages pursuant to this act, citing *Leonard v. McMorris*, 63 P.3d 323 (Colo. 2003). The CWCA defines an employer as, "every person, firm, partnership, [etc.], and any agent or officer thereof, of the above mentioned classes, employing any person in Colorado." Colo. Rev. Stat. § 8-4-101(5).

The situation at hand is distinct from *Leonard v. McMorris*, as the individual Defendants in this case are partners of a limited partnership, not a corporation. The issue in *Leonard v. McMorris* was whether or not "the General Assembly intended the Wage Act's definition of 'employer' to supersede Colorado's otherwise applicable corporate law." 63 P.3d at 330. The court held that the definition did not change the corporate law principles that hold an officer and agent of a *corporation* liable in their representative capacity only and not individually. *Id*. In the present case, it is unclear which, if any, of the partners would have limited liability to third parties. Under the Colo. Uniform Limited Partnership Act, general partners remain individually liable. *See Gladin v. Von Engeln*, 195 Colo. 88 (Colo. 1978). Limited partners, on the other hand, are only individually liable if the limited partner "participates in the control of the business." Colo. Rev. Stat. § 7-62-303.

Because this is a case involving a partnership, I find that Plaintiffs have sufficiently stated a claim for violation of the CWCA against the individual Defendants.

III.  DEFENDANTS' MOTION TO DISQUALIFY COLORADO LEGAL SERVICES

Defendants also presented this Court with a motion to Disqualify Colorado Legal Services.  For the reasons stated on the record at the December 6, 2006 hearing, I find Defendants' Motion to Disqualify Colorado Legal Services to be without merit.

In conclusion, it is

ORDERED that Defendants' Motion to Transfer Venue [Docket # 14] is **DENIED**.  It is

FURTHER ORDERED that Plaintiff's Motion to Dismiss [Docket # 27] is **DENIED**.  It is

FURTHER ORDERED that Defendants' Motion to Disqualify Colorado Legal Services [Docket # 43] is **DENIED**.  It is

FURTHER ORDERED that Defendants' file and Answer in this matter on or before **Thursday, January 18, 2007**.

Dated:  January 4, 2007

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
U. S. District Judge