IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No. 06-cv-01043-WYD-MJW

ELIESER YAEL VELÁSQUEZ CATALÁN *et al.*,

    Plaintiffs,

v.

VERMILLION RANCH LIMITED PARTNERSHIP *et al.*,

    Defendants.

---

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR A PROTECTIVE ORDER PURSUANT TO FED. R. CIV. P. 26(c)**

---

Plaintiffs filed this lawsuit concerning their mistreatment while they worked for Defendants on Vermillion Ranch. Despite its questionable relevance, Defendants are currently seeking information during discovery about Plaintiffs' immigration status and immigration history, mainly since they left Defendants' employ. Plaintiffs, therefore, move this Court for a protective order to preclude such inquiries by Defendants during discovery, in order to avoid an improper *in terrorem* effect.

### BACKGROUND

Plaintiffs, Chilean farm workers, were recruited and hired by Defendants to work on their ranch. Defendants obtained temporary H-2A visas for Plaintiffs pursuant to 8 U.S.C. § 1188 – a visa program commonly referred to as the H-2A program, and set a wage rate of $800 to $850

1

per month. First Am. Compl. ¶ 73 (Doc. 13). Plaintiffs do not speak English and are not familiar with U.S. customs or laws. *Id.* ¶¶ 53-54.

All of Plaintiffs' claims relate to labor violations arising during the course of their employment with Defendants while they were H-2A workers. *Id.* ¶ 2. Plaintiffs have claims for unpaid wages under the Fair Labor Standards Act, forced labor claims under the Trafficking Victim Protection Reauthorization Act (TVPRA), and fraudulent recruitment, retaliation, forced labor, false imprisonment and outrageous conduct, while they worked for Defendants. *Id.* ¶ 3.

The parties do not dispute that the entire time Plaintiffs worked for Defendants, they were lawfully authorized to be present in the United States as H-2A workers. Scheduling Order at 8-9 (Doc. 59). Defendants, however, insist on inquiring about Plaintiffs' immigration status since leaving the ranch. In requests for Defendants' Interrogatories to Plaintiffs, which are attached as Exhibit 1, Defendants request information related to Plaintiffs' immigration history since leaving the ranch:

1. Are you presently authorized or since leaving Vermillion Ranch have you been authorized by any agency or bureau of the U.S. Department of Homeland Security to live in the United States? If so, what is your current or previous legal status classification since you left Vermillion Ranch, and under what section of the 1952 Immigration & Nationality Act, as amended, and the corresponding regulations have you been authorized to live in the U.S., on what date was this authorization issued, and on what date does it expire?

2. Are you presently or since leaving Vermillion Ranch have you been authorized by the U.S. Department of Homeland Security to be employed in the United States? If so, under what section of the 1952 Immigration & Nationality Act, as amended, and the corresponding regulations has your employment authorization been issued, on what date was it issued, and on what date does it expire?

6. Have you attended any school or classes in the United States, including

> any vocational or English-language classes or training? If so, for each school or class, please list its name and address, the dates you attended and the subject matter you studied, and the section of the 1952 Immigration & Nationality Act, as amended, the corresponding regulations, and the classification that has authorized your attendance at any school in the United States?

Moreover, in Defendants' Request for Production, which are attached as Exhibit 2, Defendants similarly request all related documents, including a request that Plaintiffs sign Freedom of Information and Privacy Act Requests with the Department of Homeland Security:

> 2. Other than for the purpose of authorizing your employment by Vermillion Ranch, any and all applications, petitions and other documents of any kind filed by you or anyone acting on your behalf with or sent to any bureau or agency within the U.S. Department of Homeland Security or the U.S. Department of State.
>
> 3. Other than for the purpose of authorizing your employment by Vermillion Ranch, any and all approvals, denials, correspondence and other documents of any kind you or anyone acting on your behalf has received from any bureau or agency within the U.S. Department of Homeland Security or the U.S. Department of State.
>
> 10(2). Your notarized signature on two copies of the enclosed form G-639, Freedom of Information and Privacy Act Request, which authorizes release of records from the Department of Homeland Security.

Defendants have also made other requests about employment history that will authorize Defendants to ask third parties about Plaintiffs' immigration status since leaving Vermillion Ranch.[1]

These discovery requests are not the first time that Defendants have tried to improperly make Plaintiffs' immigration status an issue in the case. On multiple occasions, Defendants have

---

[1] Defendants have several requests that inquire into contact information of employers since leaving the ranch and request that Plaintiffs sign a blanket release for all of their employment records with subsequent employers. See Ex. 1 ¶ 4; Ex. 2 ¶¶ 4, 10(1). Plaintiffs fully intend to comply with these requests with relevant subsequent earnings information, but for the release of information that would authorize Defendants access to the immigration status and history of Plaintiffs.

raised certain Plaintiffs' immigration status since leaving the ranch, when it was of no relevance to the claims or defenses in the case. *See, e.g.,* Defs.' Mot. Disqualify at 5 (Doc. 43) (Plaintiffs "broke their H-2A contracts and left the petitioning employer, Vermillion Ranch, to live and work in the U.S. illegally . . . Having absconded, these plaintiffs are no longer *legally* present in the United States."); *see also* Defs.' Reply Pls.' Response to Mot. Transfer Venue at 2 (Doc. 35) (Various Plaintiffs "absconded into unlawful status where they live and work in the State of Washington"); Defs.' Reply Pls.' Response to Mot. Disqualify at 6 (Doc. 55) ("plaintiffs [] absconded from the ranch and stayed in the United States illegally"). Moreover, Defendants' Answer filed on January 18, 2007, states that "four plaintiffs broke their H-2A contracts to remain in the United States illegally," evidencing Defendants' continued insistence on raising the issue of Plaintiffs' immigration status. Defs.' Answer ¶¶ 4, 29 (Doc. 95).

Defendants have also previously attempted to use Plaintiffs' immigration status to retaliate against Plaintiffs. After leaving the employment of Defendants, certain Plaintiffs were threatened in response to a letter in which they had requested their passports, visas and wages. Defendants' then counsel stated that she had spoken with a U.S. ICE prosecutor who recommended that their passports and wages not be returned, and that they may be contacted by "an ICE law enforcement officer or the U.S. Attorney's Office in charge of criminal investigations." Letter from Anne Filbert to certain Plaintiffs dated August 9, 2005 attached as Exhibit 3. Defendants also instigated a criminal investigation with the Moffat County Sheriff's Office over the departure of certain Plaintiffs, resulting in the apparent reporting of certain

Plaintiffs to U.S ICE, as well as the criminal investigation of Plaintiffs counsel.[2] Moffat County Sheriff's Offense Report attached as Exhibit 4.

Plaintiffs, therefore, are requesting the prohibition of such requests about their immigration status and history throughout discovery because they have a chilling effect on this litigation in that the questions are unduly burdensome, oppressive, prejudicial and interposed for an improper purpose.

**ARGUMENT**

The scope of civil discovery includes only those matters "relevant to the claim or defense of any party" and is "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Although liberal, discovery has boundaries and is not unlimited. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351-52 (1978). Rule 26(b)(2)(C)(iii) allows a court to limit discovery when:

> the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

In addition, Rule 26(c) authorizes a district court to grant a protective order to preclude discovery of a matter to protect a person from annoyance, embarrassment, oppression, or undue burden or expense. Fed. R. Civ. P. 26(c); *Gillard v. Boulder Valley Sch. Dist. Re-2*, 196 F.R.D. 382, 385 (D. Colo. 2000).

The party seeking a protective order has the burden to show good cause. Fed. R. Civ. P. 26(c). The good cause determination "requires the court to balance the party's need for the

information against the injury which might result from unrestricted disclosure." *Exum v. United States Olympic Comm.*, 209 F.R.D. 201, 206 (D. Colo. 2002). As set out more fully below, Plaintiffs can show good cause to prevent Defendants from pursuing discovery that is annoying, embarrassing and oppressive to Plaintiffs.

A. <u>Prohibiting Discovery into Areas Related to Plaintiffs' Immigration Status Is Consistent with Case Law and Federal Policy</u>.

Plaintiffs have good cause to seek to preclude all inquiries related to their immigration status and history since they left Vermillion Ranch because the discovery of such information is harmful to Plaintiffs and the public interest. Courts have repeatedly prohibited inquiries into the immigration status of worker-plaintiffs in order to prevent the necessarily chilling of effect of such inquiries. *See, e.g., Rivera v. Nibco*, *Inc.,* 364 F.3d 1057, 1074-75 (9th Cir. 2004) (upholding protective order prohibiting inquires into immigration status because of the harm of disclosure); *EEOC v. First Wireless Group, Inc.*, 225 F.R.D. 404, 406 (E.D.N.Y. 2004) (upholding protective order granted because of the chilling effect on employees); *Topo v. Dhir*, 210 F.R.D. 76, 78 (S.D.N.Y. 2002) (noting the "*in terrorem* effect" of inquiring into immigration status); *Liu v. Donna Karan Int'l, Inc.*, 207 F. Supp. 2d 191, 193 (S.D.N.Y. 2002) (finding disclosure carries "'danger of intimidation, the danger of destroying the cause of action'"); *Flores v. Amigon*, 233 F. Supp. 2d 462, 464 (E.D.N.Y. 2002) (recognizing disclosure would inhibit employees' pursuit of rights); *In re Reyes*, 814 F.2d 168, 170 (5th Cir. 1987) (noting that disclosure of immigration status could inhibit petitioners in pursuing their rights in the case); *see also Hernandez v. City Wide Insulation of Madison, Inc.*, Case No. 05C0303, 2006 U.S. Dist. LEXIS 86756, at *2 (E.D. Wis. Nov. 30, 2006) (upholding protective order because harm of disclosure outweighs need for information).

This harm of allowing disclosure into immigration status is well established, where such discovery in employment litigation would significantly discourage employees from bringing actions against their employers who engage in abusive employment practices. *First Wireless Group*, 225 F.R.D. at 406. As explained by the Ninth Circuit:

> Granting employers the right to inquire into workers' immigration status in cases like this would allow them to raise implicitly the threat of deportation and criminal prosecution every time a worker, documented or undocumented, reports illegal practices or files a Title VII action. Indeed, were we to direct district courts to grant discovery requests for information related to immigration status in every case involving national origin discrimination under Title VII, countless acts of illegal and reprehensible conduct would go unreported.

*Rivera*, 364 F.3d at 1065. Farm workers are particularly susceptible to the chilling effect because they often overcome a background of intimidation and fear at the workplace in exercising their employment rights. *See Beliz v. W.H. McLeod & Sons Packing Co.*, 765 F.2d 1317, 1332-33 (5th Cir. 1985) ("[T]he legislative history of the [Migrant and Seasonal Agricultural Worker Protection] Act notes that farm workers who attempt to assert their rights must overcome a general background of fear and intimidation caused by the widespread practice of retaliation against those who complain about violations.")

Plaintiffs in this lawsuit are not different. Forcing Plaintiffs, who are farm workers from Chile, to reveal their immigration history since leaving the ranch will have an *in terrorem* effect on Plaintiffs. Given the past history of Defendants' contact with U.S. ICE and law enforcement, Plaintiffs have reasonable fears that this information could somehow be used against them to deter their participation in this lawsuit.[3] *See* Exs. 3-4. In fact, contacting U.S. ICE about a

---

[3] Defendants will certainly argue that they are required to notify what was formerly the INS under the H-2A regulations. 8 C.F.R. § 214.2(h)(5)(vi)(A). While that notification requirement exists, the crucial distinction is that Defendants improperly used their notification requirement as a threat against Plaintiffs, who had legitimately requested possession of their personal documents and wages. Ex. 3. Moreover, Defendants took the retaliation one

7

worker in retaliation for that worker's employment complaint constitutes prohibited retaliation. *See Contreras v. Corinthian Vigor Ins. Brokerage*, *Inc.,* 103 F. Supp. 2d 1180, 1186 (N.D. Cal. 2000); 29 U.S.C. § 215(a)(3); *cf. Sure-Tan, Inc. v. Nat'l Lab. Relations Bd.*, 467 U.S. 883, 894-97 (1984). Beyond the harm of disclosure to Plaintiffs, the chilling effect will also constitute an unacceptable burden on the public interest in seeing cases brought forward about abusive labor practices, as Plaintiffs' case not only involves claims for unpaid wages, but also a variety of claims that include forced labor. *See Rivera,* 364 F.3d at 1065.

The insistence by Defendants to identify certain Plaintiffs as "illegal" and to now request disclosure of immigration history, therefore, is seemingly interposed for an improper purpose and would only result in extreme prejudice to Plaintiffs. In light of the above, Plaintiffs' case for a protective order is particularly strong.

B.  <u>No Countervailing Interest Outweighs the Good Cause Shown, since Defendants Are Able to Engage in all Relevant and Necessary Discovery</u>.

Where the disclosures of requested information may cause injury, the party seeking discovery must demonstrate that its need for the information outweighs the injuries that may be caused for disclosure. *Johnson v. Olathe Dist. Schools*, 212 F.R.D. 582, 584 (D. Kan. 2003); *cf. Centurion Indus., Inc. v. Warren Steuror & Assocs.*, 665 F.2d 323, 325-26 (10th Cir. 1981). Defendants have yet to articulate any conceivable basis for concluding that all inquiries related to immigration status and history, after Plaintiffs left the employ of Defendants, are at all relevant to the parties' claims and defenses. Courts have repeatedly held that inquiries into immigration status are not relevant to the claims of defenses brought by workers who have sued their

---

step further by suggesting that Plaintiffs were under criminal investigation and in contacting local law enforcement to initiate an investigation. *Id.*

employers for unpaid wages and on-the-job mistreatment. *In re Reyes*, 814 F.2d at 170 (holding that immigration status is not relevant to FLSA claims); *Flores v. Albertsons, Inc.*, No. CV 01-00515, 2002 U.S. Dist. LEXIS 6171, at *19 (C.D. Cal. Apr. 9, 2002) (holding immigration status is not relevant to a claim for minimum and overtime wages under FLSA); *Cortez v. Medina's Landscaping*, 00 C 6320, 2002 U.S. Dist. LEXIS 18831, at *2-3 (N.D. Ill. Sept. 30, 2002) (denying request to compel immigration status information because it was not relevant to the FLSA claim at issue); *Topo*, 210 F.R.D. at 78-79 (finding that immigration status, at best, is a collateral issue not relevant to any material aspect of case with false imprisonment and trafficking claims).

There is no dispute that all Plaintiffs were lawfully authorized to work as H-2A workers, while they worked for Defendants. Scheduling Order at 8-9 (Doc. 59). All of Plaintiffs' claims arose out of this employment with Defendants. First Am. Compl. ¶ 2 (Doc. 13). As alleged in the Complaint, Defendants committed unlawful acts, including, but not limited to, failing to pay them proper wages under the FLSA and forcing the labor of certain Plaintiffs in violation of the TVPRA. *Id.* ¶¶ 571-632. Because these claims relate only to the conduct that occurred during the time when Defendants were employing Plaintiffs, it is entirely questionable how Plaintiffs' subsequent immigration status and immigration history, after their departure from the ranch, is relevant or material to the parties' claims or defenses. Defendants, therefore, can demonstrate no such countervailing need.

At the same time, Plaintiffs concede that some information about Plaintiffs' subsequent employment may be relevant to the claims and defenses in this case and will readily cooperate to produce such information to Defendants. Defendants, for example, have requested information

9

about Plaintiffs' subsequent earnings since leaving the ranch, which will be readily provided. Ex. 2 ¶ 4. The production of such information, however, does not necessitate any information related to Plaintiffs' immigration history. For this reason, Plaintiffs request that certain discovery requests be limited to producing only that information that is relevant to wages, rather than allow Defendants to obtain information about subsequent employment that would potentially include information about Plaintiffs' immigration status.

Even assuming that Defendants are somehow able to articulate that information related to Plaintiffs' immigration status is relevant, any need for such information substantially outweighs the injury that might result from unrestricted disclosure. *Exum*, 209 F.R.D. at 206. After balancing, courts have uniformly found that any purported need for information related to the immigration status of worker-plaintiffs does not outweigh the injuries that may be caused by disclosure. *Liu*, 207 F. Supp. 2d at 192-93; *Centeno-Bernuy v. Becker Farms*, 219 F.R.D. 59, 61-62 (W.D.N.Y. 2003); *Hernandez*, 2006 U.S. Dist. LEXIS 86756, at *2; *Flores v. Albertson*, 2002 U.S. Dist. LEXIS 6171, at *21. The relevancy, if any, of the evidence yielded by the Defendants' discovery of the Plaintiffs' immigration status would be outweighed by the potential harm to Plaintiffs, so that a protective order is required.

## CONCLUSION

For the reasons stated above, Plaintiffs' Motion for a Protective Order prohibiting any discovery inquiries into areas related to Plaintiffs' immigration status, after their departure from Defendants' employment, should be granted.

Dated this 6th day of February 2007.

                                                      Respectfully submitted,

                                                     s/Kimi Jackson_____
Kimi Jackson
Jennifer J. Lee
Patricia L. Medige
**Migrant Farm Worker Division**
**Colorado Legal Services**
1905 Sherman Street, Suite 400
Denver, CO  80203
Telephone: (303) 866-9366
FAX: (303) 830-7860
E-mail:  kjackson@colegalserv.org
         jlee@colegalserv.org
         pmedige@colegalserv.org

CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of February 2007, I electronically filed the foregoing document using the EM/ECF system which will send notification of such filing to the following e-mail address:

    Leslie Lynn Schluter
    lschluter@lawincolorado.com, mshowalter@lawincolorado.com

    John R. Paddock, Jr.
    paddockusdc@pjckn.com, mmcnichols@pjckn.com

    Kimi Jackson
    kjackson@colegalserv.org

    Patricia L. Medige
    pmedige@colegalserv.org

    s/Jennifer J. Lee
    Jennifer J. Lee
    Attorney for Plaintiffs
    **Migrant Farm Worker Division**
    **Colorado Legal Services**
    1905 Sherman Street, Suite 400
    Denver, CO 80203
    Telephone: (303) 866-9366
    FAX: (303) 830-7860
    E-mail: pmedige@colegalserv.org